UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LIBERTY BELL TEMPLE III AND EDWARD FORCHION,** | **CIVIL ACTION NO.:  3:16-1339-PGS** |
| Plaintiffs, | |
| v. | **Civil Action** |
| **TRENTON CITY POLICE DEPARTMENT AND CITY OF TRENTON,** | **Oral Argument:  April 18, 2016** |
| Defendants. | |

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO DISMISS PLAINTIFFS' CLAIMS**

---

Jacqueline A. DeGregorio, Esq.
Atty. I.D. No. 022661982
WEINER LESNIAK LLP
629 Parsippany Road
P.O. Box 438
Parsippany, NJ 07054-0438
Ph: (973) 403-1100  Fax:  (973) 403-0010
Attorneys for Defendants Trenton City
Police Department and City of Trenton

Of Counsel and on Brief:
    Jacqueline A. DeGregorio, Esq.

On the Brief:
    Donald A. Klein, Esq.
    Brian M. Hak, Esq.

1062016_1

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES .............................................................. ii

PRELIMINARY STATEMENT ........................................................... 1

STATEMENT OF FACTS ................................................................ 6

ARGUMENT ......................................................................... 11

I.    THE CLAIMS ASSERTED BY PLAINTIFFS SHOULD BE
      DISMISSED BECAUSE LIBERTY BELL III, LLC IS A JURIDICAL
      ENTITY THAT MUST BE REPRESENTED BY COUNSEL AND
      CANNOT BE REPRESENTED BY *PRO SE* PLAINTIFF
      FORCHION. ................................................................... 11

II.   PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION
      SHOULD BE DENIED. ......................................................... 15

      A.   Plaintiffs Have Not Shown A Reasonable Probability Of Success
           On The Merits. .......................................................... 16

      B.   Plaintiffs Will Not Be Irreparably Harmed In The Absence Of
           Preliminary Injunctive Relief. ......................................... 21

      C.   Granting Preliminary Injunctive Relief Will Result In Harm To
           Defendants. ............................................................. 22

      D.   Granting The Preliminary Injunctive Relief Sought Will Not Be In
           The Public Interest. ..................................................... 23

CONCLUSION ........................................................................ 25

## TABLE OF AUTHORITIES

Page

Cases

American Exp. Travel Related Services v. Sidamon-Eristoff,
    669 F.3d 359 (3rd Cir. 2012) ........................................................................... 15

Beckworth v. Law Office of Thomas Landis, LLC,
    2012 U.S. Dist. LEXIS 55007 (E.D. Pa. Apr. 18, 2012) ..................................... 12

Campbell Soup Co. v. ConAgra, Inc.,
    977 F.2d 86 (3rd Cir. 1992) ............................................................................. 21

Charles Simkin & Sons, Inc. v. Massiah,
    289 F.2d 26 (3rd Cir. 1961) ............................................................................. 16

Checker Cab of Phila. Inc. v. Uber Techs., Inc.,
    2016 U.S. App. LEXIS 4484 (3rd Cir. Mar. 10, 2016) ....................................... 21

Dougherty v. Snyder,
    469 Fed. Appx. 71 (3rd Cir. Mar. 21, 2012) ...................................................... 11

Duraco Prods. v. Joy Plastic Enters.,
    40 F.3d 1431 (3rd Cir. 1994) ........................................................................... 15

Elansari v. United States,
    615 Fed. Appx. 760 (3rd Cir. Sept. 10, 2015) ................................................... 22

Fullbrook v. Mayor of the City of Camden,
    2013 N.J. Super. Unpub. LEXIS 2695 (App. Div. Nov. 7, 2013) ........................ 20

House v. Housing and Urban Development,
    2006 U.S. Dist. LEXIS 91901 (D.N.J. Dec. 20, 2006) ........................................ 13

Hoxworth v. Blinder, Robinson & Co.,
 903 F.2d 186 (3rd Cir. 1990) ...................................................... 21

Hunterdon Transformer Co. v. Cook,
 1990 U.S. Dist. LEXIS 1382 (D.N.J. Feb. 6, 1990) ............................. 16

In re Arthur Treacher's Franchisee Litig.,
 689 F.2d 1137 (3rd Cir. 1990) ...................................................... 21

In re Cook,
 589 F. App'x 44 (3rd Cir. 2014) .................................................... 12

Ingris v. Borough of Caldwell,
 2015 U.S. Dist. LEXIS 74255 (D.N.J. June 9, 2015)........................... 12

Instant Air Freight Co. v. C.F. Air Freight, Inc.,
 882 F.2d 797 (3rd Cir. 1989) ....................................................... 15

Kos Pharms., Inc. v. Andrx Corp.,
 369 F.3d 700 (3rd Cir. 2004) ....................................................... 16

Majestic Star Casino, LLC v. Barden Dev., Inc.,
 716 F.3d 736 (3rd Cir. 2013) ....................................................... 14

Minard Run Oil Co. v. U.S. Forest Serv.,
 670 F.3d 236 (3rd Cir. Sept. 20, 2011)........................................... 15

Mohammedan Consul Es Lamont Durell Belton v.
 Malfeasance Task Force,
 2012 U.S. Dist. LEXIS 150196 (D.N.J. Oct. 16, 2012) ....................... 12

Murakush Caliphate of Amexem Inc. v. New Jersey,
 790 F. Supp.2d 241 (D.N.J. 2011)................................................. 12

Novartis Consumer Health, Inc. v. Johnson & Johnson-
 Merck Consumer Pharms. Co.,
 290 F.3d 578 (3rd Cir. 2002) ....................................................... 15

Osborn v. President of Bank of United States,
    22 U.S. 738 (1824) ................................................................. 11

Pilla v. American Bar Assn.,
    542 F.2d 56 (8th Cir. 1976) .................................................. 11

Quick Chek Food Stores v. Springfield,
    83 N.J. 438 (1980) ............................................................... 20

Riley v. Brown,
    2006 U.S. Dist. LEXIS (D.N.J. Mar. 16, 2006) ................. 16

Rowland v. California Men's Colony,
    506 U.S. 194 (1993) ............................................................. 11

Studio 45 Discotheque, Inc. v. City of Union City,
    2008 N.J. Super. Unpub. LEXIS 188 (App. Div. Mar.
    5, 2008) ................................................................................. 20

Taylor v. Montgomery,
    539 F.2d 715 (7th Cir. 1976) ............................................... 11

Turner v. American Bar Assn.,
    407 F. Supp. 451 (N.D. Tex. 1975) ..................................... 11

Wallace v. Fed. Judges of United States Dist. Court.,
    311 F. App'x 524 (3rd Cir. 2008) ......................................... 12

Ward v. Rock Against Racism,
    491 U.S. 781 (1989) ............................................................. 20

Warth v. Seldin,
    422 U.S. 490 (1975) ............................................................. 13

Whistleblower 1 v. Bd. of Educ. of Elizabeth,
    2011 U.S. Dist. LEXIS 135203 (D.N.J. Nov. 22, 2011) ..... 15

Winter v. NRDC, Inc.,
    555 U.S. 7 (2008)........................................................................................15

**Other Authorities**

Lite, N.J. Federal Practice Rules,
    Comment 2 to L.Civ.R. 11.1 (Gann) ...................................................12

## PRELIMINARY STATEMENT

This action is brought by a limited liability company, which is unrepresented by counsel (Liberty Bell Temple III, LLC) ("Liberty Bell"), and by a *pro se* plaintiff (Edward Forchion).   Under well-established United States Supreme Court and Third Circuit law, the Court should not entertain the claims asserted by plaintiff Liberty Bell because a limited liability company cannot appear in federal court unless represented by counsel.  Further, an individual proceeding *pro se*, like plaintiff Forchion, cannot represent a party other than himself in federal court and can only assert claims brought in his own right.  Consequently, the claims asserted in the Complaint, which belong to Liberty Bell, should be dismissed and the relief sought in plaintiffs' preliminary injunction motion should be denied.

Even, however, if the Court were to entertain the pending motion for a preliminary injunction, plaintiffs' papers do not establish the prerequisites for such extraordinary relief: (i) a likelihood of success on the merits, (ii) irreparable harm if an injunction is denied, (iii) that granting preliminary relief will not result in even greater harm to defendants, and (iv) that the public interest favors injunctive relief.  On the contrary, just the opposite is the case here.  Pertinently, there are highly disputed issues of fact which preclude the issuance of preliminary injunctive relief.

Plaintiffs' Complaint alleges that the religion and assembly clauses of the First Amendment have been violated by the municipal enforcement of an hours of operation ordinance in the City of Trenton. But plaintiffs either mischaracterize or ignore the context in which this matter arises -- as more fully reflected in the Certifications and police reports attached thereto, filed herewith by defendants. More particularly, since mid-January of this year there has been a history of complaints by neighboring residents and others of street fights and excessive noise after 11:00 p.m. at the property in question – property which, according to plaintiff, is leased by Liberty Bell Temple III, LLC and houses an adjacent and interconnected deli and "cannabis temple".

Plaintiffs also fail to address threshold factual issues which are disputed and require discovery, including, for example, whether the deli has been in violation of the hours of operation ordinance; whether the "cannabis temple" is distinguishable from the deli or is merely an extension of the deli; whether the "cannabis temple" is itself a business; if not, why has it not complied with the City's conditional use ordinance applicable to religious institutions; and why a content neutral ordinance like the City of Trenton's Hours of Operation Ordinance is not a valid time, place, and manner restriction equally applicable to religious institutions.

Preliminary injunctive relief is manifestly inappropriate as plaintiffs cannot satisfy any of the prerequisites for this extraordinary remedy.

## PROCEDURAL HISTORY

### Plaintiffs' Complaint

This litigation was commenced on March 9, 2016 by "Liberty Bell Temple III" and Edward Forchion against defendants Trenton City Police Department and City of Trenton (dkt. No. 1).

Misnamed in the Complaint, plaintiff Liberty Bell Temple III, LLC ("Liberty Bell") is a limited liability company (with Business ID Number 0400748970) that was established pursuant to the Revised Uniform New Jersey Limited Liability Company Act. *See* plaintiffs' Complaint, Ex. 2(B). Liberty Bell is not represented by counsel in this action.[1]

Edward Forchion, Member/Manager of Liberty Bell, is proceeding *pro se* in this action.

According to the Complaint:

- Liberty Bell "leased three commercial rental spaces at 322, 320(b) and 320-east State Street [in Trenton]."

- "322 is used as a restaurant and has a business license and must comply with business rules, laws and curfews."

- Liberty Bell "leased the buildings 320(b)-(a) for use as a; 'sanctuary – kannabosum Kourtyard' where citizen members can relax, reason, partake of our sacrament and hear our gospel (music). Away from the Government

---

[1] By message dated March 10, 2016, plaintiffs were advised by the Clerk that although an individual is entitled to proceed *pro se*, a corporation must be represented by counsel.

3

inspired "war on drugs" and the problems the Government creates on the streets with its asinine drug policies."

Plaintiffs claim that defendants are violating the First Amendment freedom of religion and freedom of assembly clauses by "ordering us to close at 11:00 pm as a business and not respecting plaintiff is a Religious Temple". Referring to the temple as "an alternative religious organization", plaintiffs claim that the temple is open 24 hours because its members are "nocturnal". As indicated in the newspaper article attached to plaintiff's Complaint as Exhibit B, plaintiffs' argument essentially reduces to the following: "I'm saying it's a church. I can operate whenever I want to. *** Marijuana is a sacrament."[2]

The Complaint seeks injunctive relief, $400.00 in filing fees, $1,000.00 for each of three occurrences complained of, and $1 million in punitive damages.

### Plaintiffs' Motion for a Preliminary Injunction

On March 24, 2016, plaintiffs filed "a motion for emergent injunction" (dkt. No. 6), to preclude the Trenton City Police from enforcing the City's hours of operation ordinance.

The motion has been made returnable before the Honorable Peter G. Sheridan, U.S.D.J. at 1:30 p.m. on April 18, 2016.

---

[2] Although plaintiffs reference a video in their Complaint, it does not support their claims.

4

## Defendants' Submission

Defendants submit this Brief in opposition to plaintiffs' motion for a preliminary injunction and in support of defendants' cross-motion to dismiss all claims asserted by plaintiffs, because Liberty Bell III, LLC is a juridical entity that must be represented by counsel and cannot be represented by *pro se* plaintiff Edward Forchion, who himself has no independent claims in this matter.

## STATEMENT OF FACTS

### Liberty Bell Temple III, LLC's Status as a Limited Liability Company

In May 2015, Liberty Bell Temple III, LLC filed as a limited liability company in the State of New Jersey under the Revised Uniform Limited Liability Company Act, listing "Restaurant" as its business purpose. (Complaint, Ex. 2(B)). In June of 2015, Liberty Bell unilaterally amended its Certificate of Formation to state its business purpose as "Religious Cannabis Temple" (Complaint, Ex. 2(A)). There is no evidence that Liberty Bell has been recognized as a not-for-profit religious organization under Federal or State of New Jersey tax laws.

### The City of Trenton Hours of Operation Ordinance

The Hours of Operation Ordinance of the City of Trenton, which is attached as Exhibit 3 to plaintiffs' Complaint, states in pertinent part as follows:

§146-22 Hours established; public access when closed; alcoholic beverage premises.

A.     No establishment on a premises whose building or grounds are closer than 100 feet to the closest point of the building or grounds of a residential property situated within any residential zone of the City shall [sic] be open for business or conduct business or invite or permit access by the general public for any purposes between the hours of 11:00 p.m. of any day and 6:00 a.m. of the following day, prevailing time.

\*\*\*

D.     At no time shall business, operation or establishment other than a licensed alcoholic beverage premises be allowed to operate between the hours of 2:00 a.m. and 6:00 a.m.

\*\*\*

§146-24  Violations and penalties.

Any person who shall violate this article shall be subject to a penalty of $250 and shall be subject to license suspension or revocation in accordance with the provisions of Article VI of this chapter.

### The Police Incident Reports

Since mid-January of this year, the Trenton Police Department has received and responded to numerous complaints of incidents in the proximity of 322 East State Street,  where plaintiff Forchion operates a restaurant/delicatessen, and the adjacent property at 320(B) East State Street, the location of a "cannabis temple" run by plaintiff Liberty Bell Temple III. (Gonzalez Cert. ¶2).

The incidents at the deli/temple have included complaints of street fights, excessive noise, and theft.  The Trenton Police Department has also issued summonses for violations of City ordinances regarding parking and the hours of operation of a business. (Gonzalez Cert. ¶3).

On January 17, 2016, at 12:23 a.m., a complaint of excessive noise emanating from the deli/temple was received.  The caller indicated that loud music and people making noise happens every weekend. (Gonzalez Cert. ¶4, Ex. A).

On February 7, 2016, at 3:27 a.m., a complaint of loud noise emanating from the deli/temple was received. (Gonzalez Cert. ¶5, Ex. B).

7

On February 28, 2016 at 2:30 a.m., officers were detailed to 322 East State Street on the report from a private individual of a street fight. When the officers arrived, there were approximately 30 people outside of the deli/temple. One person was arrested and charged with resisting arrest, improper behavior, and failure to disperse. (Gonzalez Cert. ¶6, Exs. C, D).

On March 2, 2016 at 6:55 p.m., officers were detailed to 322 East State Street on the report of a theft. The actual theft occurred at approximately midnight in the deli but was not reported until the following afternoon/evening. Forchion was the victim and claimed that his iPad had been stolen. The officers took a report and left. (Gonzalez Cert. ¶7, Exs. E, F).

On March 5, 2016, at 2:11 a.m., officers shut down the deli/temple pursuant to the City's ordinance which restricts the times at which certain businesses can be operated. Severally illegally parked cars were ticketed. Lieutenant Sutton met with Forchion outside the building. The lights were on in the deli and Sutton observed patrons inside. People were cooking and selling food from the deli. Sutton observed Forchion return to the deli and enter the temple through an interior door inside the deli. People then began exiting the building carrying food. (Sutton Cert. ¶¶3-4, Exs. A, B).

On March 6, 2016, a complaint came in at 3:50 a.m. regarding the deli/temple. (Gonzalez Cert. ¶8, Ex. G).

On March 20, 2016, at 1:00 a.m., while officers were driving down East State Street, they observed that the lights were on in the deli and that an illuminated "open" sign was also turned on.  The officers further observed patrons walking in and out of the deli.  One woman walked out with a container of food from which she was eating chicken.  When Forchion saw the officers, he hurried the patrons out of the deli and into the temple and immediately shut off the lights and the illuminated sign in the deli.  When the officers knocked on the door no one answered.  However, when they were walking away Forchion stuck his head out and said "You're wasting valuable resources."  He was mailed a summons for violation of the City Ordinance  regarding the hours of operation of a business. (Gonzalez Cert. ¶9, Exs. H, I).

### The Conditional Use Letter to Plaintiffs

Responding to a recent complaint and questions concerning the property at 320-322 East State Street (which is located in a Business "B" zone), the Zoning Officer of the City of Trenton wrote to plaintiffs on March 22, 2016 advising that currently the only use that has been approved for the property is the restaurant and that the conditional use provisions of the City's Land Use Ordinance require that any "church/temple" must have prior planning/zoning approval in accordance with Chapter 315-132, 134, and 137 of the Ordinance.  Among the issues considered in connection with such approval are compliance with bulk requirements for the zone,

off-street parking, and occupancy loads.   (Bucchi Cert., ¶2, Ex. A). This is a standard letter sent regarding a proposed "church/temple" use in zones in the City in which a "church/temple" use is a conditional use. (Bucchi Cert., ¶3).

To date, plaintiffs have not applied for a conditional use for the "cannabis temple".  (Bucchi Cert., ¶4).

<u>ARGUMENT</u>

I.   THE CLAIMS ASSERTED BY PLAINTIFFS SHOULD
BE DISMISSED BECAUSE LIBERTY BELL III, LLC IS A
JURIDICAL ENTITY THAT MUST BE REPRESENTED BY
COUNSEL AND CANNOT BE REPRESENTED BY *PRO SE*
PLAINTIFF FORCHION.

"It has been the law for the better part of two centuries … that a corporation may appear in the federal courts only through licensed counsel." <u>Rowland v. California Men's Colony</u>, 506 <u>U.S.</u> 194, 201-02 (1993) (citing <u>Osborn v. President of Bank of United States</u>, 22 <u>U.S.</u> 738 (1824)). *See also* <u>Turner v. American Bar Assn.</u>, 407 <u>F. Supp.</u> 451, 476 (N.D. Tex. 1975) (citing "the long line of cases" from 1824 to the present holding that a corporation may only be represented by licensed counsel), <u>aff'd sub nom.</u> <u>Taylor v. Montgomery</u>, 539 <u>F.2d</u> 715 (7th Cir. 1976) and <u>aff'd sub nom.</u> <u>Pilla v. American Bar Assn.</u>, 542 <u>F.2d</u> 56 (8th Cir. 1976).

Pertinently, "[a]s the courts have recognized, the rationale for that rule applies equally to all artificial entities." <u>Rowland</u>, <u>supra</u>, 506 <u>U.S.</u> at 202. Thus, the rule applies to limited liability companies, like Liberty Bell III, LLC. *See* <u>Dougherty v. Snyder</u>, 469 <u>Fed. Appx.</u> 71, 72 (3rd Cir. Mar. 21, 2012) (the rule that a corporation may appear in the federal courts only through licensed counsel "applies to LLCs, even those with only a single member, because even single-member LLCs have a legal identity separate from their members."). *See also, e.g.*,

11

Beckworth v. Law Office of Thomas Landis, LLC, 2012 U.S. Dist. LEXIS 55007 at *2 n.1 (E.D. Pa. Apr. 18, 2012).

The rule that artificial entities must be represented by counsel is embodied in L.Civ.R. 11.1, which provides that: "In each case, the attorney of record who is a member of the bar of this Court shall personally sign all papers submitted to the Court or filed with the Clerk." See Lite, N.J. Federal Practice Rules, Comment 2 to L.Civ.R. 11.1 (Gann) ("[O]nly an individual may appear pro se. Where an organization attempts to file a complaint without counsel, it runs afoul of L.Civ.R. 11.1."). See also (citing L.Civ.R. 11.1) Mohammedan Consul Es Lamont Durell Belton v. Malfeasance Task Force, 2012 U.S. Dist. LEXIS 150196 (D.N.J. Oct. 16, 2012) (representative cannot act as legal counsel without proof of bar admission); Murakush Caliphate of Amexem Inc. v. New Jersey, 790 F. Supp.2d 241, 265 (D.N.J. 2011) (a juridical entity cannot proceed in a legal matter pro se).

Nor can pro se plaintiff Edward Forchion represent Liberty Bell III, LLC. "[P]ro se litigants … may not represent parties in federal courts other than themselves." In re Cook, 589 F. App'x 44, 46 (3rd Cir. 2014). See also Wallace v. Fed. Judges of United States Dist. Court., 311 F. App'x 524, 526 n.2 (3rd Cir. 2008) (as plaintiff proceeds pro se, he may only assert claims brought in his own right); Ingris v. Borough of Caldwell, 2015 U.S. Dist. LEXIS 74255 (D.N.J. June 9, 2015) (pro se litigant may not represent other parties or file a complaint on

anyone else's behalf); <u>House v. Housing and Urban Development</u>, 2006 <u>U.S. Dist.</u> <u>LEXIS</u> 91901 at *1 n.1 (D.N.J. Dec. 20, 2006) ("Plaintiff is proceeding pro se and may not file a complaint on behalf of another party.").

The claims asserted here are claims asserted on behalf of Liberty Bell III, LLC.  Not only is the Complaint rife with references equating 'LBT3" with "a religious temple" affected by defendants' actions, but it is Liberty Bell that plaintiffs' allege has "leased three commercial rental spaces at 322, 320(b) and 320-east State Street" -- one of which is used as a restaurant, and the others used as a "sanctuary – kannabosum Kourtyard" away from the Government's "asinine drug policies".  However, Liberty Bell cannot file a complaint without counsel and, *a fortiori*, cannot seek preliminary injunctive relief without counsel.

As a *pro se* plaintiff, Forchion cannot file a complaint or maintain this litigation on behalf of another party, including Liberty Bell, and, here, has no independent claims to assert, or relief to be sought, in his own right.  Besides the claims asserted on behalf of Liberty Bell, the claims which plaintiff Forchion attempts to assert involve claims asserted on behalf of others -- for example, "parishioners" of Liberty Bell, patrons of the deli, and persons ticketed for illegal parking.  Plaintiff Forchion lacks standing to assert such claims.  *See* <u>Warth v.</u> <u>Seldin</u>, 422 <u>U.S.</u> 490, 498-99 (1975):

> [Standing] involves both constitutional limitations on federal-court
> jurisdiction and prudential limitations on its exercise.  ***   [T]he

plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.

*See also* <u>Majestic Star Casino, LLC v. Barden Dev., Inc.</u>, 716 <u>F.3d</u> 736, 748 (3rd Cir. 2013).

Given the foregoing, all claims asserted by Liberty Bell and Forchion in their Complaint should be dismissed and their motion for a preliminary injunction should be denied.

## II.   PLAINTIFFS'  MOTION  FOR  A  PRELIMINARY INJUNCTION SHOULD BE DENIED.

Even if either plaintiff could assert claims here in support of an application for a preliminary injunction, the prerequisites for preliminary injunctive relief are manifestly not met.

"[A]n injunction is 'an extraordinary remedy, which should be granted only in limited circumstances.'"   Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3rd Cir. 2002) (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3rd Cir. 1989)). See also Whistleblower 1 v. Bd. of Educ. of Elizabeth, 2011 U.S. Dist. LEXIS 135203 (D.N.J. Nov. 22, 2011).

The decision whether to grant or deny a preliminary injunction is within the sound discretion of the Court.  See American Exp. Travel Related Services v. Sidamon-Eristoff, 669 F.3d 359, 366 (3rd Cir. 2012); Duraco Prods. v. Joy Plastic Enters., 40 F.3d 1431, 1438 (3rd Cir. 1994).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. NRDC, Inc., 555 U.S. 7, 20 (2008). See also Minard Run Oil Co. v. U.S. Forest Serv., 670 F.3d 236, 249-50 (3rd Cir. Sept. 20, 2011):

"[T]o obtain a preliminary injunction, a plaintiff must show: '(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.'"

(citing Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3rd Cir. 2004)).

Moreover, and especially pertinent here, a preliminary injunction cannot be issued when there are disputed issues of fact. *See* Charles Simkin & Sons, Inc. v. Massiah, 289 F.2d 26, 29 (3rd Cir. 1961) ("As a prerequisite to the issuance of an interlocutory injunction, the moving party must show a clear right to relief. There must be no disputed issues of fact."). *See also* Riley v. Brown, 2006 U.S. Dist. LEXIS 18485 at *12 (D.N.J. Mar. 16, 2006). A verified denial can "sufficiently cloud the factual horizon so as to render a preliminary injunction inappropriate." Hunterdon Transformer Co. v. Cook, 1990 U.S. Dist. LEXIS 1382 at *4 (D.N.J. Feb. 6, 1990).

## A.   Plaintiffs Have Not Shown A Reasonable Probability Of Success On The Merits.

As demonstrated by the Certifications submitted by defendants, the facts here not only are disputed, they are frequently ignored by plaintiffs in their Complaint and in their preliminary injunction application. This case is not only about a municipality enforcing its hours of operation ordinance.

There is a history here of complaints of serious incidents at the deli/temple -- of street fights, of excessive noise, of theft. As detailed in police reports,

16

numerous such incidents have occurred in the past several months.   By way of
example:

- On February 28, 2016 at 2:30 a.m., officers were detailed to the site on the
  report from a private individual of a street fight. When the officers arrived,
  there were approximately 30 people outside of the deli/temple.   One person
  was arrested and charged with resisting arrest, improper behavior, and
  failure to disperse.

- On January 17, 2016, a caller, complaining at 12:23 a.m. of excessive noise
  emanating from the deli/temple, indicated that loud music and people
  making noise happens there every weekend.   Similar complaints were
  received thereafter.

- On March 2, 2016 at 6:55 p.m., officers were detailed to the deli/temple on
  the report of a theft.   The actual theft occurred at approximately midnight in
  the deli but was not reported until the following afternoon/evening.
  Forchion himself was the victim and claimed that his iPad had been stolen.

Clearly, plaintiffs have flagrantly violated City ordinances and by their actions
have endangered the public safety through facilitating street fights and theft, have
negatively impacted the quality of life for residents of the City through excessive
noise, have interfered with the peace and quiet of the City and its residents through
these activities, have interfered with the City's streets through illegally parked cars

belonging to customers/visitors of the deli/temple, and have wasted the City's valuable police resources through incident after incident at the site.

Plaintiffs do not challenge the validity of the City of Trenton's Hours of Operation Ordinance. On the contrary, they admit in their Complaint that "322 is used as a restaurant and has a business license and must comply with business rules, laws and curfews." However, what plaintiffs fail to address is the fact that the police reports clearly indicate that the deli is in operation after 11:00 p.m. and therefore in violation of the Hours of Operation Ordinance. For example:

- On March 2, 2016, Forchion's iPad was stolen in the deli <u>at approximately midnight.</u>

- On March 5, 2016, <u>at 2:11 a.m.,</u> the lights were on in the deli, patrons were observed inside, and people were cooking and selling there.

- On March 20, 2016, <u>at 1:00 a.m.,</u> the lights were on in the deli, an illuminated "open" sign was turned on, patrons were observed walking in and out of the deli, and a woman walked out of the deli with a container of food from which she was eating chicken.

Contrary to the suggestion in plaintiffs' papers, the purported distinction between the deli and the "cannabis temple" is not at all clear. Indeed, the record suggests that they are not distinct. For example:

- When on March 5, 2016, officers found the deli in operation at 2:11 a.m., Forchion entered the temple through an interior door inside the deli and people then began exiting the building carrying food.

- When, on March 20, 2016, officers found the deli in operation at 1:00 a.m., Forchion, seeing the officers, hurried the patrons out of the deli and into the temple and immediately shut off the lights and the illuminated sign in the deli.

Since the "cannabis temple" is a mere extension of the immediately adjacent and interconnected deli, it should be subject to the restrictions of the City's Hours of Operation Ordinance.

Furthermore, the documentary evidence included by plaintiffs in their Complaint indicates that the operator of the "cannabis temple" is a limited liability company organized under the laws of the State of New Jersey.   Moreover, plaintiffs have produced no evidence that the "cannabis temple" is a not-for-profit religious institution under either Federal or State of New Jersey tax laws.   It is defendants' understanding that a membership fee is charged by the temple and plaintiffs acknowledge in their Complaint that economic activity is an aspect of the temple.   Since the "cannabis temple" appears to be a business, it should be subject to the restrictions of the City's Hours of Operation Ordinance on this alternative ground as well.

19

Even if this were not the case, however, the "cannabis temple" would be subject to the restrictions of the City's Hours of Operation Ordinance because Liberty Bell has not complied with the conditional use provisions of the City's Land Use Ordinance, which are applicable to all churches and temples in the City. *See* Bucchi Certification.

Finally, it bears noting that the purpose of the City's Hours of Operation Ordinance is to protect the residential character of adjoining neighborhoods and ensure the health, safety, and general welfare of the community. Municipal ordinances, such as the Ordinance here, restricting the hours of operation of certain businesses, have been routinely upheld, whether enacted under the general police power or under the zoning power. *See, e.g.,* Quick Chek Food Stores v. Springfield, 83 N.J. 438, 448 (1980), upholding an ordinance requiring all retail establishments in a neighborhood-commercial ("N-C") zone, except pharmacies and restaurants, to close from 9:00 p.m. until 6:00 a.m. The Court held that:

> We have no hesitancy in finding that the trial court was justified in holding that limitations upon hours of service in commercial establishments located in a residential milieu is a regulation related to the health, peace and comfort of those surrounding homes. Doubtless such a regulation furthers the public health and welfare of the residential community.

Id. at 449. *See also* Studio 45 Discotheque, Inc. v. City of Union City, 2008 N.J. Super. Unpub. LEXIS 188 (App. Div. Mar. 5, 2008) (upholding ordinance limiting the hours during which licensed establishments were permitted to serve alcoholic

beverages, and governing their hours of operation); Fullbrook v. Mayor of the City of Camden, 2013 N.J. Super. Unpub. LEXIS 2695 (App. Div. Nov. 7, 2013) (ordinance regulating the hours of operation of certain businesses located within 200 feet of a residential zone represented a valid exercise of the city's police power).  It is well recognized that health, safety, and general welfare concerns are valid bases for adopting time, place, and manner restrictions that are content neutral.  *See* Ward v. Rock Against Racism, 491 U.S. 781, 791, 798-800 (1989). The history with respect to the subject property is testament to the propriety of, and the compelling need for, such ordinances.

In sum, plaintiffs have not shown either a reasonable likelihood of success on the merits or a clear entitlement to relief.  This alone warrants denial of their motion for preliminary injunctive relief.[3]

**B.** **Plaintiffs Will Not Be Irreparably Harmed In The Absence Of Preliminary Injunctive Relief.**

As the Third Circuit recently stated in Checker Cab of Phila. Inc. v. Uber Techs., Inc., 2016 U.S. App. LEXIS 4484 at *4-5 (3rd Cir. Mar. 10, 2016):

---

[3] The Third Circuit has placed particular weight on the likelihood of success on the merits and probability of irreparable harm elements of the standard for preliminary injunction, stating: "We cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent."  Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197 (3rd Cir. 1990) (quoting In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3rd Cir. 1990)) (emphasis added).

> The law is clear in this Circuit.  In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or equitable remedy following a trial.  The preliminary injunction must be the *only* way of protecting the plaintiff from harm.

(quoting Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3rd Cir. 1992).

Here, plaintiffs not only seek a jury trial (demanding damages) but they have quantified their damages in their Complaint, based on alleged incidents:

$400.00 filing fee

$1000  Feb 28

$1000  March 4

$1000  March 5

$1,000,000  Punitive Damages

Thus, even if they could meet the other prerequisites for preliminary injunctive relief (which they clearly cannot), plaintiffs cannot credibly claim irreparable harm. *See also* Elansari v. United States, 615 Fed. Appx. 760, 762 (3rd Cir. Sept. 10, 2015) (denying preliminary injunction and finding no irreparable harm where plaintiff "argues that he needs to use marijuana for . . . religious reasons, [but] he fails to specify what his . . . religious beliefs are").

## C. Granting Preliminary Injunctive Relief Will Result In Harm To Defendants.

Plaintiffs' argument that the City will not be harmed if a preliminary injunction is granted is patently wrong.  Plaintiffs, in effect, are trying to create a

zone of immunity -- directly across from City Hall (as they flaunt in newspaper accounts) -- where standard and routine City ordinances do not apply to them. However, the City's Hours of Operation Ordinance, and other ordinances implicated by the activities at the subject property, are well-recognized and necessary ordinances designed to ensure the health, safety, and general welfare of the community. Indeed, absent the City's enforcement of this and other ordinances, the complaints that the subject property has generated in recent months will only mushroom.  Clearly, defendants City of Trenton and Trenton Police Department have an interest in enforcing City ordinances on behalf of the City and its residents that outweighs any claimed interest of plaintiffs.

**D.     Granting The Preliminary Injunctive Relief Sought Will Not Be In The Public Interest.**

The ordinances which defendants seek to enforce in this case protect the public. Many of the complaints to which the police responded were complaints from the public -- about fighting in the streets, about loud noise, about theft -- and the like, late at night or in the early morning.  The legitimate interests of the public also clearly outweigh any interest claimed by plaintiffs.

***

In sum, plaintiffs cannot demonstrate either a likelihood of success on the merits or irreparable harm, each of which is an absolute prerequisite for preliminary injunctive relief.  Nor can they show the harm to them if a preliminary

injunction is not issued outweighs the harm to defendants and to the public if a preliminary injunction is issued. Plaintiffs' motion for a preliminary injunction should be denied.

## CONCLUSION

For the foregoing reasons, defendants, Trenton City Police Department and City of Trenton, respectfully request that plaintiffs' motion for a preliminary injunction be denied and that defendants' cross-motion seeking dismissal of all claims asserted against defendants by plaintiffs be granted.

Respectfully submitted,

WEINER LESNIAK LLP
Attorneys for Defendants, Trenton City Police
Department and City of Trenton

By: _Donald A. Klein_
Donald A. Klein, Esq.

By: _Jacqueline A. DeGregorio_
Jacqueline A. DeGregorio, Esq.

By: _____
Brian M. Hak, Esq.

Dated:  April 4, 2016

1062016_1

25